1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAYLE WINTER,                                    ) | 1:11-cv-00977 AWI-BAM |
|                                                  ) | |
|                    Plaintiff,                    ) | **FINDINGS AND RECOMMENDATIONS** |
|                                                  ) | **REGARDING PLAINTIFF'S SOCIAL** |
|          v.                                      ) | **SECURITY COMPLAINT** |
|                                                  ) | |
| MICHAEL ASTRUE, Commissioner of                  ) | |
| Social Security,                                 ) | |
|                                                  ) | |
|                    Defendant.                    ) | |
|                                                  ) | |
| _____) | |

## BACKGROUND

Plaintiff Gayle Winter ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income ("SSI") benefits and disability insurance benefits pursuant to Titles II and XVI, respectively, of the Social Security Act.   Before the Court is Plaintiff's Opening Brief (Doc.19) and the Commissioner's Response (Doc. 24).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe, for findings and recommendations to the District Court.

//

1

1

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed an application for benefits on January 18, 2008, alleging disability beginning February 28, 2006, which she later amended to August 31, 2007.  AR 88-92, 96-100.  Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ").  AR 100.  ALJ Timothy Snelling held a hearing and subsequently issued an order denying benefits on December 15, 2009, finding Plaintiff was not disabled.  AR 26-41.  This appeal followed.

### Medical Record

The record is summarized here in chronological order with particular regard to the reports relating to Plaintiff's alleged mental impairments.  Nonetheless, the record as a whole was reviewed and will be specifically referenced as necessary to this Court's decision.  AR 233-352.

Notes prior to Plaintiff's alleged disability onset date of August 31, 2007, reveal that Plaintiff had a long history of a bipolar disorder and alcohol abuse. AR 234.  Such notes further show that Plaintiff was seen in April 2006 by Paul McGrew, M.D., and reported that she had not been to a doctor in more than four years.  AR 245. At that time, Plaintiff stated that she had been off her medications for several weeks and needed refills.  AR 245.

On August 31, 2007, Robert Chin, M.D., treated Plaintiff for complaints of depression. AR 244.  Dr. Chin diagnosed bipolar affective disorder, moderate depression, and "unspecified" alcoholism and noted a prescription for Depakote and Lexapro.  AR 244.  The following month, Plaintiff told Dr. Chin that her depression was "about the same." AR 243.  Dr. Chin noted that Plaintiff had appropriate judgment, mood, and affect and normal memory.  AR 243.  Dr. Chin's diagnosis remained unchanged.  AR 243.  Dr. Chin wrote new prescriptions for Wellbutrin, Seroquel, and Depakote and discontinued Divalproex.  AR 243.  At Plaintiff's October 2007 visit, Dr. Chin noted that "Seroquel caused excess sedation." AR 242.  Dr. Chin made no changes to

---

[1]       References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

Plaintiff's diagnosis or prescriptions.  AR 242.  The next month, Dr. Chin noted that Plaintiff had appropriate judgment, mood, and affect but also pressured speech and verbosity and was in a manic phase.  AR 241.  The doctor switched Plaintiff to Zyprexa.  AR 241.

Later in the month, Dr. Chin observed that Plaintiff's speech was less pressured.  AR 240. Dr. Chin prescribed Zyprexa and discontinued Seroquel.  AR 240.  Dr. Chin again noted appropriate judgment, mood, and affect and normal memory.  AR 240.  In December 2007, Dr. Chin again noted appropriate judgment, mood, and affect and normal memory and diagnosed bipolar affective disorder and moderate depression.  AR 239.  The doctor continued Plaintiff's prescription of Zyprexa.  AR 239.

In a January 2008 follow-up visit with Dr. Chin, Plaintiff reported less inactivity and "[s]till feel[ing] some depression" but "feel[ing] better" since stopping Zyprexa several days earlier.  AR 238.  Dr. Chin again noted appropriate judgment, mood, and affect and normal memory and wrote a new prescription for Celexa.  AR 238.

At her March 2008 visit with Dr. Chin, Plaintiff stated that she was sleeping "okay" and not hypomanic.  AR 276.  She acknowledged that when she was manic, she over-shopped.  AR 276.  Dr. Chin continued her prescription of Depakote.  AR 276.  At Plaintiff's visit the following month, Dr. Chin's diagnosis remained unchanged.  AR 275.  Dr. Chin wrote a new prescription for Olanzapine-Fluoxetine.  AR 275.  In May 2008, Dr. Chin put Plaintiff on a "trial" of Topamax.  AR 274.  At the June 2008 visit, Dr. Chin encouraged Plaintiff to increase Topamax "as tolerated."  AR 273. Dr. Chin again remarked that Plaintiff had appropriate judgment, mood, and affect and normal memory, and the doctor's diagnoses remained unchanged.  AR 273.  In August 2008, Plaintiff reported that she felt unmotivated but had stopped drinking alcohol one month earlier.  AR 271.  Dr. Chin noted that Plaintiff had a mildly depressed affect and depression.  AR 271.

In October 2008, M.J. Hetnal, M.D., a psychiatrist, began treating Plaintiff. AR 290-93. Plaintiff reported that she was hypomanic and energetic "most of her life" and "did okay" until 1995 or 1996 when she was raped by her boss.  AR 290.  She admitted to "periods of times lasting for a few days at the time with excessive energy, money spending, impulsiveness and lack of sleep."  AR 290.

During one of those periods, she claimed to have purchased six cars. AR 290. She reported "feeling increasingly depressed in the last nine months with increasing symptoms in the last three months." AR 290. She told Dr. Hetnal that she was sad, unable to enjoy things, felt worthless, slept excessively, and had no energy or motivation. AR 290. She admitted to crying spells, being isolated, and having suicidal thoughts but no intent or plan to kill herself. AR 290. She reported tolerating medication well. AR 291. She said she worried excessively, experienced one prior panic attack, and acknowledged being "quite angry-verbally." AR 291. She denied significant mood swings since 2003, and Dr. Hetnal observed that she appeared "predominantly depressed at present." AR 291. She admitted that Depakote helped with her mood swings but said she could not tolerate Seroquel, Wellbutrin, or Topamax. AR 291. Plaintiff also admitted to abusing alcohol, having 8 to 10 drinks per day and a history of blackouts, but asserted that she had been sober for previous six months. AR 291.

On examination, Dr. Hetnal observed that Plaintiff was alert, oriented, and cooperative and that her speech was "somewhat slow" but goal-oriented. AR 292. The psychiatrist noted that Plaintiff appeared depressed and admitted to suicidal thoughts but denied intent and had no gross thought disorder. AR 292. Plaintiff reported that her memory was not as good as it used to be, and Dr. Hetnal noted that Plaintiff's concentration and attention were "somewhat decreased." AR 292. Dr. Hetnal, however, found that Plaintiff's cognitive functioning and (remote and recent) memory were intact and that her judgment and insight were good. AR 292. Dr. Hetnal diagnosed bipolar disorder with current depressive disorder, ruleout anxiety and panic disorders, and alcohol abuse in remission. AR 292. Dr. Hetnal also noted financial stress and "disability from work" and assigned a Global Assessment Functioning (GAF) score of 50.[2] AR 292. More specifically, Dr. Hetnal stated that Plaintiff had a history of bipolar disorder since 1995 and was "predominately depressed for the last nine months." AR 293. Dr. Hetnal made no changes to Plaintiff's medications and noted that

---

[2]    A GAF score represents a present rating of overall psychological functioning on a scale of 0 to 100. See Diagnostic and Statistical Manual of Disorders, at 34 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV"). A GAF score in the range of 41 to 50 denotes: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* (Emphasis in original).

Plaintiff "remain[ed] disabled from work."  AR 293.

Notes in the latter half of 2009 show that Plaintiff's doctors continued to make adjustments to her medications.  AR 351-52.

**Hearing Testimony**

ALJ Snelling held a hearing on September 29, 2009, in Stockton, California.  Plaintiff appeared and testified; she was assisted by attorney Solange Gonccalves.  Plaintiff's claim for disability stems primarily from mental impairments including bipolar and compulsive disorders, anxiety, depression, tremors, and a hemolitic autoimmune disorder.  AR 48, 88, 96.

At the time of the hearing, Plaintiff was fifty-seven-years old.  Plaintiff is a high school graduate who attended "some college."  AR 24, 48.  Plaintiff testified that she was first diagnosed with bipolar disorder in 1996, at which time she received electro shock therapy.  AR 55-56.  Around that time, she stated that she bought six cars.  AR 69.  Plaintiff acknowledged returning to work in 1999.  AR 56.

When asked about her previous employment, Plaintiff testified that her recent work history included jobs as a bookkeeper, a general manager of a retail store, a vice president of her own "organizational development" firm, and a manager of a visitor's center.  AR 50-54.  She stated that the bookkeeper job was a "simple job," but, because of her "moods," she did not get along with her co-workers and could not complete tasks.  AR 50.  Plaintiff's general manager job was "too much pressure," and she was terminated.  AR 51.  Plaintiff stated that after her organizational development firm grew larger, she sold it.  AR 55.

When asked about a typical day, Plaintiff said she has trouble sleeping, stayed up nights and slept in the mornings.  AR 57.  She said she sometimes slept as much as 20 hours.  AR 68.  Plaintiff described keeping her duplex dark with the television on and fixing tv dinners and only leaving her duplex to go to the grocery store and doctor's appointments.  AR 57, 58.  Plaintiff testified that she did not shower as often as she should and only performed chores that "absolutely" had to be done.  AR 59.  She testified that she had a driver's licence, occasionally driving, and also having a dog.  AR 74.  She also stated that she attended church "four weeks ago for the first time in a long time" and acknowledged visiting her mother, who lived nearby.  AR 75-76.

Plaintiff said her medications helped—that she was the "best" she had been "for quite awhile"—and allowed her to have a conversation but not complete tasks. AR 61. She admitted to "still" getting bulletins from CareerBuilder.com and "look[ing] at them" but panicking when thinking about interviewing. AR 65.

### ALJ's Findings

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 22-26.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 31. Further, the ALJ identified bipolar disorder and anemia as severe impairments. AR 32. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairment or combination of impairments did not meet or exceed any of the listed impairments. AR 33.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work with no more than frequent interaction with supervisors, co-workers, and the general public. AR 33-36. The ALJ concluded that Plaintiff could perform her past relevant work as a bookkeeper. AR 33-36. Therefore, the ALJ determined Plaintiff was not disabled. AR 22.

### SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal

1    standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold

2    the Commissioner's determination that the claimant is not disabled if the Secretary applied the

3    proper legal standards, and if the Commissioner's findings are supported by substantial evidence.

4    *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

5                                          <u>**REVIEW**</u>

6            In order to qualify for benefits, a claimant must establish that he is unable to engage in

7    substantial gainful activity due to a medically determinable physical or mental impairment which has

8    lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C.

9    § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such

10   severity that he is not only unable to do her previous work, but cannot, considering her age,

11   education, and work experience, engage in any other kind of substantial gainful work which exists

12   in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

13   burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

14   1990).

15           Here, Plaintiff argues that the ALJ erred by rejecting her treating psychiatrist's  opinion and

16   improperly rejecting the credibility of her claims and those of her mother.

17                                       <u>**DISCUSSION**</u>[3]

18   A.      ***Treating Psychiatrist's Opinion Evidence***

19           Plaintiff argues that the ALJ did not give sufficient reasons for rejecting the opinion of her

20   treating psychiatrist M.J. Hetnal, M.D.  In opposition, Defendant contends that no credited opinion

21   assessed limitations as extreme as those assessed by Dr. Hetnal and that the ALJ properly rejected

22   Dr.  Hetnal's opinion.  The Court agrees.

23           Cases in this Circuit distinguish among the opinions of three types of physicians: (1) those

24   who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

---

[3]         The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

(examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988). Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record. *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

Plaintiff's treating psychiatrist, opined in April 2009, that Plaintiff had "marked" and "extreme" limitations in activities of daily living, "extreme" limitations in social functioning, and "extreme" deficiencies in concentration, persistence, or pace. AR 287-288. In support of these considerable limitations, Dr. Hetnal noted that Plaintiff did not pay her bills, shopped, had no energy, isolated herself, and had "extreme" difficulty filling out forms and sustaining reading. AR 287-88.

The ALJ gave "limited weight" to Dr. Hetnal's opinion that Plaintiff was disabled finding that such extraordinary restrictions were "inconsistent with the record as a whole" and "far more extreme than the findings expressed in Dr. Hetnal's own treatment notes and the claimant's own statements." AR 35.

The ALJ summarized Dr. Hetnal's' medical opinion as follows:

> Limited weight is given to the opinions of the claimant's treating psychiatrist, Dr. M.J. Hetnal because it is inconsistent with the record as a whole. Dr. Hetnal opined that the claimant is unable to make occupational adjustments, carry out or remember

8

instructions, respond to supervisors or handle customary work pressures. This opinion is inconsistent and far more extreme than the findings expressed in Dr. Hetnal's treatment notes and the claimant's own statements. Additionally, even though Dr. Hetnal stated that the claimant has lived in a community residence or other highly supportive living situation, he noted that this occurred for 1 year in 1999-2000, not recently. While Dr. Hetnal opined that the claimant was disabled from work, it is unclear if he was using the term as defined under the Social Security Administration's regulations. Moreover, such a conclusion is reserved for the Commissioner of Social Security. Further, Dr. Hetnal's report was made on April 1, 2009, and the more recent treatment notes, as well as the claimant's testimony at the hearing, indicate that her condition was significantly improved.

AR 35.

Here, the ALJ gave specific, legitimate reasons for rejecting Dr. Hetnal's opinion. Most notably, Dr. Hetnal's opinion was inconsistent with the other physicians' opinions and with the medical record. (Doc. 24 at 8). The ALJ thoroughly described the opinion of Dr. Hetnal as well as the other medical opinions and concluded that Dr. Hetnal's opinion was an outlier among the other physicians. No credited opinion assessed limitations as extreme as those assessed by Dr. Hetnal (*i.e.*, finding that Plaintiff was disabled and finding extreme mental limitations in several functional areas). AR 287-288. In contrast, the State Agency physician opined that Plaintiff's bi-polar disorder was non-severe. AR. 35. Agreeing with the state agency psychiatrist's general findings, in order to give Plaintiff every benefit of the doubt, the ALJ found that Plaintiff's bi-polar disorder resulted in more than a minimal functional limitation in the Plaintiff's ability to perform basic work activities. AR 35. The ALJ also noted that Plaintiff's treating physician, Dr. Chin, frequently opined that Plaintiff's judgment, mood, and affect were appropriate and that her memory was normal. AR 34, 238-41, 243, 273.

Second, the ALJ noted that Dr. Hetnal's treatment notes provide no support for the extreme limitations that he assessed. The opinion of a treating doctor may be appropriately rejected where the treatment notes fail to present "the sort of description and recommendations one would expect to accompany a finding that [the claimant] was totally disabled under the [Social Security] Act"). *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (treating physician's opinion properly rejected as treatment notes failed to present "the sort of description and recommendations one would expect to accompany a finding that [the claimant] was totally disabled under the [Social Security] Act"). Indeed, in October 2008, Dr. Hetnal remarked only that Plaintiff's concentration and attention

were "somewhat decreased" but that her cognitive functioning and memory were intact and her insight and judgment good. AR 292. Dr. Hetnal further assessed a GAF score of 50, which is borderline moderate/serious, not borderline marked/extreme, as purported in the psychiatrist's April 2009 opinion. AR 292, 287-88. The ALJ properly found that Dr. Hetnal's opinion was not consistent with the treatment records. *See id.*

Here, the ALJ did not credit Dr. Hetnal's medical opinion because it was not supported by his own medical findings and it was inconsistent with the medical record. These were appropriate reasons to reject Dr. Hetnal's opinion, and the ALJ was entitled to resolve the conflict between Dr. Hetnal's opinion and those of the other doctors in favor of the conclusion supported by the consistent objective evidence. Accordingly, the Court will not reverse the ALJ's decision for failure to properly weigh Plaintiff's treating physicians' medical opinion testimony.

B.   ***Credibility***

Next, Plaintiff argues that the ALJ erred by improperly rejecting her testimony and the testimony of her mother, Joy Gunnerson. (Doc. 19 at 5). Specifically, Plaintiff, complains that the ALJ failed to adequately credit her allegations, including that she kept her house dark, isolated herself, had sleep issues, and, at one point, purchased six cars. (Doc. 19 at 6). Plaintiff also asserts that the ALJ should have been persuaded by Plaintiff's mother's statements that Plaintiff was unmotivated and was "once vibrant and productive." (Doc. 19 at 6-7). The Commissioner contends that the ALJ's credibility determination was proper. (Doc. 24 at 12).

An ALJ must make specific findings and state clear and convincing reasons to reject a claimant's symptom testimony unless affirmative evidence of malingering is suggested in the record. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1993); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

In this case, the ALJ considered Plaintiff's credibility as follows:

> I considered but granted little probative weight to the claimant's testimony. As discussed above, the medical evidence does not support the claimant's allegations as to the intensity, persistence, and limiting effects of her impairments. The claimant was able to work despite having no psychiatric treatment for 4 years and there is no indication that her symptoms cannot be treated. In addition, I also considered but granted little probative weight to the statements of the claimant's mother. Her statements essentially mirror the subjective complaints of the claimant, which as

10

discussed above, are inconsistent with the record as a whole.

AR 36.

The above demonstrates that the ALJ's rejection of Plaintiff's testimony regarding Plaintiff's symptoms is based on the inconsistency between her subjective complaints and the medical evidence. An ALJ may use ordinary techniques for credibility evaluation, *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and make inferences "logically flowing from the evidence," *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996). An ALJ is required to make specific credibility findings. SSR 96-7p, 1996 WL 374186 , at *4 (stating that the credibility finding "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight"); *Thomas*, 278 F.3d at 958-59. An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony. *See Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1995) (en banc).

In rejecting Plaintiff's credibility and the similar statements by Plaintiff's mother, the ALJ provided several valid reasons. AR 34. First, the ALJ considered the claims of Plaintiff and her mother, that Plaintiff was unmotivated and had problems with her memory, and made specific credibility findings that are supported by the record. AR 33, 36. The ALJ's decision shows that the ALJ found Plaintiff's claims not credible to the extent alleged, inpart, because Plaintiff's bipolar disorder diagnosis dated back to the mid-1990s, at about which time she purportedly purchased the six cars and at which time she obtained ECT therapy and other treatment, which eventually allowed her to successfully return to full time work. AR 36, 288, 290, 293. Indeed, as the ALJ noted, Plaintiff acknowledged in 2006—the year preceding her alleged onset—that she had not been to a doctor in more than four years. AR 36, 245. Second, the ALJ inferred that Plaintiff's successful prior treatment in combination with the treatment notes under consideration for the relevant time period suggested that Plaintiff's symptoms could be successfully treated. AR 35. The ALJ properly found that Plaintiff's favorable response to medication and notes showing improvement in her condition undermined her claim of total disability. *See Tommasetti*, 533 F.3d at 1039-40.

1      The ALJ also noted that Plaintiff had attended church "for the first time in a long time" and

2  looked through job announcements, which, the ALJ reasoned, indicated some improvement in her

3  condition and an interest in obtaining employment.    AR 34-35, 65, 75-76.    The ALJ properly

4  determined that such evidence was inconsistent with a claim of total disability and adversely

5  impacted Plaintiff's credibility.    AR 34-36.    *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir.

6  2002) (inconsistencies in a claimant's testimony may be used to discredit her subjective complaints);

7  *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ may consider inconsistencies between

8  a claimant's testimony and the evidence in rejecting her credibility).

9      Further, a claimant's statement as to pain or other symptoms cannot alone support a finding

10  of disability. 42 U.S.C. § 423(d)(5)(A) (stating that "[a]n individual's statement as to pain or other

11  symptoms shall not alone be conclusive evidence of disability").    Thus, Plaintiff's reference to her

12  own subjective accounts of her symptoms cannot, by itself, support her claim for disability.

13      Finally, the ALJ determined that Plaintiff's mother's statements mirrored Plaintiff's

14  statements. AR 36.    In determining whether a claimant is disabled, an ALJ must consider lay witness

15  testimony concerning a claimant's ability to work.    *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.

16  1993).    An ALJ may reject the testimony of a lay witness if the ALJ "give[s] germane reasons" for

17  doing so.    *Bayliss*, 427 F.3d at 1218 (citing *Lewis v. Apfel*, F.3d 503, 511 (9th Cir. 2001)).

18  Moreover, where an ALJ provides germane reasons for rejecting a claimant's subjective complaints

19  and where the statements of a lay witness are"similar to such complaints, "it follows that the ALJ

20  gave germane reasons for rejecting" the statements of the lay witness."    *Valentine*, 574 F.3d at 694.

21  Because Plaintiff's mothers statements, here, mirrored, as the ALJ observed, Plaintiff's subjective

22  account of her symptoms and because the ALJ provided germane reasons for rejecting Plaintiff's

23  statements, the ALJ gave germane reasons for rejecting Plaintiff's mother's testimony.    *See id.*

24      Here, the ALJ provided a number of specific reasons for discrediting Plaintiff's testimony,

25  and identified specific testimony that was inconsistent with the record.    The reasons identified by the

26  ALJ for finding Plaintiff not entirely credible are valid and supported by substantial evidence, and,

27  therefore, the decision must not be disturbed.    Accordingly, the ALJ did not err in rejecting the

28  testimony of Plaintiff and her mother.

1

**<u>RECOMMENDATION</u>**

2      Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

3 evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court

4 RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of

5 Social Security be **DENIED** and that **JUDGMEN**T be entered for Defendant Michael J. Astrue and

6 against Plaintiff Gayle Winter.

7      These findings and recommendations will be submitted to the District Judge pursuant to the

8 provisions of Title 28 of the United States Code section 636(b)(l).  Within fifteen (15) days after

9 being served with these findings and recommendations, the parties may file written objections with

10 the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and

11 Recommendations."  The parties are advised that failure to file objections within the specified time

12 may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

13 1991).

14

15      IT IS SO ORDERED.

16

17 Dated:    September 5, 2012               /s/ Barbara A. McAuliffe
                                       UNITED STATES MAGISTRATE JUDGE
18

19

20

21

22

23

24

25

26

27

28